# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NORMAN IVORY,

       Plaintiff,

   v.

JAMES E. TILTON, et al.,

       Defendants.

CASE NO. 1:09-cv-01272-GSA PC

SCREENING ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE

(Doc. 1)

THIRTY-DAY DEADLINE

## Screening Order

**I.  Screening Requirement**

Plaintiff Norman Ivory, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc-1 (Religious Land Use and Institutionalized Persons Act of 2000) on July 20, 2009.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.  Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). "[P]laintiffs [now] face a higher burden of pleadings facts . . ," Al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009), and while a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III.  Plaintiff's Claims

### A.  Summary of Complaint[1]

At the time of the filing of this action, Plaintiff was housed at California State Prison-Corcoran. Plaintiff is currently housed at the Los Angeles County Jail, and brings this suit against California Department of Corrections and Rehabilitation Director James E. Tilton, Warden James Hartley, Associate Warden Rosemary Ndoh, Correctional Captain M. V. Sexton, Correctional Lieutenant A. Valdez, Correctional Officers M. D. Foucht and S. Meraz, and Does 1-9 for the violation of his rights while he was housed at Avenal State Prison (ASP) in 2008 and 2009.

Plaintiff alleges that he requires a Kosher diet for religious reasons, and was harassed, abused, and persecuted while at ASP following his submission of a group appeal in which he addressed the failure of prison officials to meet the minimum standards for the Jewish Kosher Meal Program and complained of the hostility he experienced when he tried to address the issue

---

[1] Although Plaintiff cites to exhibits in his complaint, the Court did not receive any exhibits.

2

1  informally. Immediately following the submission of the group appeal, Plaintiff was transferred
2  from Facility 1 to Facility 5, and the next month he was transferred to Facility 6, where he faced
3  harsh treatment.

4        Plaintiff alleges that following his transfer to Facility 6, he was called "Kosher boy" in front
5  of the general population inmates, leading to the perception that Plaintiff was a problem amongst
6  staff and inmates. (Doc. 1, Comp., court record p. 5, ¶12.) Plaintiff's food was both under heated
7  and burned, and his meals were withheld on several occasions between December 2008 and January
8  2009, purportedly because his name was not on the list of inmates approved to receive Kosher meals.
9  During the same time period, Plaintiff did not receive the eating utensils to which he was entitled
10 under the meal program, including a disposable tray, bowl, spoon, and cup. When Plaintiff wrote
11 to Defendant Ndoh to complain about the treatment, he was told to file an appeal.

12       On January 19, 2009, Plaintiff was standing in line for breakfast when Defendant Valdez
13 ordered him out of line and back to his housing unit without any breakfast. Plaintiff's appeal of that
14 incident was partially granted.

15       On January 27, 2009 Plaintiff went to the dining hall and received his breakfast. When he
16 complained to Defendant Foucht that he did not receive a cup for his beverage, Foucht said, "I'm
17 not giving you nothing[,] Kosher boy." (Comp., p. 6, ¶14.) Plaintiff told Foucht that it was not his
18 position, as a correctional officer, to grant or deny Plaintiff a cup, and that Plaintiff needed to speak
19 to a cook. Defendant Valdez then said, "That[']s it[.] [Y]ou[']re done[.] [G]et out of the chow hall."
20 (Id.) Plaintiff exited the chow hall in compliance with the order, and was then placed in mechanical
21 restraints and a holding cage for an hour on Defendant Valdez's order.

22       When Plaintiff was released from the holding cage and his restraints were being removed by
23 Defendant Foucht, Foucht attempted to provoke Plaintiff by jerking Plaintiff violently and verbally
24 taunting him. Plaintiff kept silent and was ordered to return to his housing unit without breakfast.

25       Upon arrival at his housing unit, Defendant Meraz opened the door to release other inmates
26 for work but refused to let Plaintiff in and slammed the door in Plaintiff's face. Plaintiff said,
27 "[H]ey[,] it[']s cold out here," and Defendant Meraz burst through the door, charged Plaintiff, and
28 struck Plaintiff in the chest hard enough to make Plaintiff's head to hit the concrete wall, which

caused Plaintiff to lose his breath in pain, become dizzy, and almost lose consciousness. (Id., p. 7, ¶16.) Defendant Meraz pointed his pepper spray canister at Plaintiff's face the whole time, and taunted him. Meraz then placed Plaintiff in mechanical restraints and told Plaintiff he was going to take care of Plaintiff. Defendant Meraz filed a false report stating that Plaintiff threatened to assault him; and stole, destroyed, or otherwise disposed of Plaintiff's property while Plaintiff was being transported to administrative segregation. Prior to Plaintiff's transport to administrative segregation, he heard Defendant Sexton state to others, including Defendants Valdez and Foucht, that this ought to teach Plaintiff about challenging them with his inmate appeals and that Plaintiff was lucky they did not kick his teeth in.

**B.     Free Exercise of Religion and RLUIPA Claims**

Plaintiff alleges that, prior to his transfer to Facility 6, he was not provided with a Kosher diet as required by his religion, in violation of his rights under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987) (internal quotations and citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by* Shakur, 514 F.3d at 884-85. Further, RLUIPA precludes the government from imposing a substantial burden on the religious exercise of inmates, unless that burden is in the furtherance of a compelling government interest, and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1.

Plaintiff alleges that prison officials failed to meet the minimum requirements of the Jewish Kosher Meal Program, but it is not clear what their failings entailed and how they burdened the practice of Plaintiff's religion (e.g., was Plaintiff forced to either eat foods in violation of his religious beliefs or go hungry, was Plaintiff given an incomplete meal, etc.?). Further, Plaintiff has not linked this issue to any particular defendant. Therefore, Plaintiff fails to state a claim for

violation of the Free Exercise Clause or RLUIPA arising from the alleged failure to provide Jewish inmates with an appropriate Kosher diet as mandated by the meal program. In addition, although Plaintiff alleges that following his transfer to Facility 6, he was not provided a meal or appropriate eating utensils on several occasions, it is not clear whether this was a failing of the general program to accommodate Plaintiff's religious diet or whether it was instead retaliatory conduct directed at Plaintiff because of his complaints. The allegations as pled fall short of supporting a free exercise or RLUIPA claim.

### C. Eighth Amendment Claims

Plaintiff alleges that Defendants Valdez, Foucht, and Meraz violated his rights under the Eighth Amendment by using excessive force against him, and emotionally and mentally abusing him.

#### 1. Excessive Force

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995 (1992).

For excessive force claims, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment, regardless of whether or not significant injury is evident. Id. at 9-10.

Plaintiff's allegations against Defendant Meraz are sufficient to support an Eighth Amendment claim. However, neither Defendant Valdez nor Defendant Foucht was involved in that incident of physical force. Further, the allegation that Defendant Foucht jerked Plaintiff while

///

removing his mechanical restraints does not rise to the level of a constitutional violation. Therefore, the only cognizable excessive force claim is that alleged against Defendant Meraz.

### 2. Other Conditions of Confinement

"[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Hudson at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

Verbal harassment or abuse alone is not sufficient to violate the Constitution, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Therefore, Defendants' attempts to verbally provoke or taunt Plaintiff provide no basis for the imposition of liability under section 1983.

Finally, the denial of breakfast on January 19, 2009, and on January 27, 2009, by Defendant Valdez, and the placement in a holding cage for an hour on January 27, 2009, do not rise to the level of Eighth Amendment violations. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006).

### D. Due Process Claims

Plaintiff alleges that Defendants deprived him of his property and liberty without due process of law.

### 1. Deprivation of Property

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13, 104 S.Ct. 3194 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 102 S.Ct. 1148 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause

///

of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson, 468 U.S. at 533.

Defendant Meraz's wrongful theft and destruction of Plaintiff's property constitute an unauthorized deprivation and because Plaintiff has postdeprivation remedies available to him, he may not pursue a due process claim. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).

### 2. Deprivation of Liberty

The Due Process Clause also protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Id. "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wilkinson at 223 (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995)). State-created liberty interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin at 484.

The placement of Plaintiff in administrative segregation does not support a due process claim because Plaintiff does not have a protected liberty interest in remaining free from segregation. Id.; also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

### E. Retaliation Claims

Plaintiff alleges a pattern of harassment following his attempt to informally resolve prison officials' failure to comply with the minimum standards for the Jewish Kosher Meal Program, and his submission of a group appeal on the issue. Further, Plaintiff alleges harsh treatment after he was transferred to Facility 6 following the submission of the group appeal.

///

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Under section 1983, Plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Additionally, there is no respondeat superior liability under section 1983, and therefore, each defendant is only liable for his own misconduct. Iqbal at 1948-49.

Plaintiff's allegations that "Defendants" in general harassed him, called him Kosher boy in front of other inmates, both under heated and burned his food, deprived him of his Kosher meals on several occasions, and failed to provide him with proper eating utensils are not sufficient to state any claims. (Comp., court record pp. 5-6, ¶¶11, 12.) Plaintiff has not linked these events to any particular defendants. Plaintiff may not simply lump all named defendants into a generic group and assert a violation of his rights. Plaintiff must briefly but specifically allege which defendants, identified either by name or by Doe 1, Doe 2, etc., took which adverse actions against him. Further, Plaintiff must set forth facts indicating that the adverse action complained of was taken because of his exercise of his First Amendment rights.

Although Plaintiff has linked Defendants Foucht, Valdez, and Meraz to the specific incidents summarized in subsection A, Plaintiff has not set forth sufficient factual allegations supporting the claim that *because of* his pursuit of his grievances, Defendants took those actions against him. Iqbal at 1949-50. Further, Foucht's mere statement that he was not giving anything to Plaintiff, whom he referred to as Kosher boy, is not sufficient adverse to support a constitutional claim. Brodheim v. Cry, 584 F.3d 1262, 1269-70 (9th Cir. 2009).

However, Plaintiff's allegation that immediately prior to his transport to administrative segregation, he overheard Defendant Sexton telling Defendants Valdez and Foucht that this ought to teach Plaintiff about challenging them with all of those appeals is sufficient to support a claim against Sexton for involvement in transferring Plaintiff to segregation in retaliation for filing appeals. See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) (timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent). Defendants Valdez and Foucht's mere presence for the statement is not sufficient, though, to link them to Plaintiff's retaliatory placement in segregation. Jones, 297 F.3d at 934.

### F. Claims Against Defendants Tilton, Hartley, and Ndoh

Plaintiff has not alleged sufficient facts to state any claims against Director Tilton, Warden Hartley, or Associate Warden Ndoh. Defendants may not be held liable for the actions of their subordinates under a theory of respondeat superior, and Plaintiff's vague allegations that Tilton and Hartley were responsible for promulgating policies which led to the violation of Plaintiff's rights do not support a claim under section 1983. Iqbal at 1949-50; Moss, 572 F.3d at 969. Plaintiff has not identified with any specificity at all policies which caused the violation of his Constitutional rights, or linked Tilton or Hartley to the creation or implementation of such policies.

With respect to Defendant Ndoh, neither her direction to Plaintiff to file an inmate appeal, made in response to his written request for an interview, nor her disregard or denial of his appeals or requests for interviews support a claim for violation of Plaintiff's rights. The prison's systems made available to inmates for addressing complaints, be it a request for an interview process or the formal inmate appeals process, do not have the effect of creating rights enforceable under federal law. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001); also Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on the deprivation of a constitutional or other federal right).

Plaintiff has not alleged any specific facts supporting a claim that Defendant Ndoh was directly involved in the violation of his rights or that Ndoh possessed knowledge sufficient to allow imposition of liability on her for the violation of Plaintiff's rights by other staff members. Taylor

v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); also Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).  Accordingly, Plaintiff fails to state a claim against Defendant Ndoh.

### G.   Claims for Declaratory and Injunctive Relief

In addition to money damages, Plaintiff seeks declaratory and injunctive relief.  "'A case or controversy exists justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.'" Feldman v. Bomar, 518 F.3d 637, 642 (9th Cir. 2008) (quoting Headwaters, Inc. v. Bureau of Land Management, Medford Dist., 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations and citation omitted)).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." U.S. v. State of Wash., 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted).  The governmental conduct at issue in this action is past conduct which occurred while Plaintiff was housed at ASP, and Plaintiff's remedy is damages should he prevail on his claim that his constitutional rights were violated.

In addition to declaratory relief, Plaintiff seeks an injunction mandating his transfer to a prison closer to Los Angeles that has a Kosher meal program, and mandating that Defendants follow the rules of the Jewish Kosher Meal Program.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S.Ct. 1660, 1665 (1983) (citations omitted); Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006).  "Abstract injury is not enough." Lyons, 461 U.S. at 101, 103 S.Ct. at 1665.  "[P]laintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical."

///

Id. (internal quotations and citations omitted). "The key issue is whether the plaintiff is 'likely to suffer future injury.'" Jones, 444 F.3d at 1126 (quoting Lyons at 105, 1667).

In addition, any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Plaintiff is no longer housed at ASP and this suit is limited to seeking redress for Defendants' past actions. Therefore, the Court lacks jurisdiction to issue the orders for injunctive relief sought by Plaintiff.

**IV.     Conclusion and Order**

Plaintiff's complaint states a cognizable excessive force claim against Defendant Meraz and a cognizable retaliation claim against Defendant Sexton, but fails to state any other claims upon which relief may be granted under section 1983 or RLUIPA.

The Court will provide Plaintiff with the opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against Defendant Meraz for use of excessive force and Defendant Sexton for retaliation, Plaintiff may so notify the Court in writing, and his other claims will be dismissed. Plaintiff will then be provided with two summonses and two USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process on Defendants Meraz and Sexton.

If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal at 1948-49; Jones at 934. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's claims for declaratory and injunctive relief are dismissed from this action for failure to state a claim;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

    a. File an amended complaint curing the deficiencies identified by the Court in this order, or

    b. Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only against Defendant Meraz for use of excessive force and Defendant Sexton for retaliation; and

4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **January 8, 2010**                    /s/ **Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE