IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMAN IVORY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>C/O MERAZ.,<br><br>　　　　　Defendant. | 1:09-cv-01272 AWI GSA PC<br><br>FINDINGS AND RECOMMENDATIONS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 99)<br><br>OBJECTIONS DUE IN THIRTY DAYS |

Plaintiff is a state prisoner proceeding pro se in this civil rights action. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Pending before the Court is Defendant's motion for summary judgment. Plaintiff has opposed the motion. Defendant filed a reply.

**I.     Procedural History**

This action proceeds on the original complaint. Plaintiff, an inmate currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) at High Desert State Prison, brings this action against correctional officials employed by the CDCR. The events that give rise to this lawsuit occurred while Plaintiff was housed at Avenal State Prison. Plaintiff names the following defendants: CDCR Director James Tilton; Warden James Hartley; Associate

Warden Ndoh; Captain M. Sexton; Lieutenant A. Valdez; Correctional Officer (C/O) M. Fouch; C/O S. Meraz.  Plaintiff set forth the following claims: Free Exercise of Religion and RLUIPA claims; Excessive Force; Conditions of Confinement; Due Process (Deprivation of Property and Deprivation of Liberty); Retaliation.  On January 8, 2010, an order was entered, advising Plaintiff that the complaint stated a cognizable claim for excessive force against Defendant Meraz and a cognizable claim for retaliation against Defendant Sexton.  The complaint failed to state any other claims upon which relief could be granted under section 1983 or RLUIPA.   The court granted Plaintiff an opportunity to either file an amended complaint or notify the Court of his willingness to proceed against Defendants Meraz and Sexton on his claims of excessive force and retaliation.  On August 9, 2010, Plaintiff notified the Court of his willingness to proceed on the cognizable claims.  On May 27, 2011, Defendants Sexton and Meraz appeared by motion to dismiss.  On March 23, 2012, an order was entered by the District Court, adopting the findings and recommendation of the Magistrate Judge, and dismissing Defendant Sexton from this action based on Plaintiff's failure to exhaust his available administrative remedies prior to filing suit. The only remaining Defendant is C/O Meraz.

**II.     Allegations**

On January 27, 2009, Plaintiff went to the dining hall and received his breakfast.  When he complained to C/O Fouch that he did not receive a cup, Fouch said "I'm not giving you nothing, Kosher boy."  Plaintiff told Fouch that it was not his position, as a correctional officer, to grant or deny Plaintiff a cup.  Lt. Valdez then said "That's it.  You're done.  Get out of the chow hall."  Plaintiff exited the dining hall in compliance with the order, and was then placed in mechanical restraints and a holding cage for an hour on Lt. Valdez's order.

When Plaintiff was released from the holding cage and his restraints were being removed by C/O Fouch, Fouch attempted to provoke Plaintiff by jerking Plaintiff violently and verbally taunting him.  Plaintiff kept silent and was ordered to return to his housing unit without breakfast.

Upon arrival at his housing unit, C/O Meraz opened the door to release other inmates for work but refused to let Plaintiff in and slammed the door in Plaintiff's face. Plaintiff said, "Hey, it's cold out here," and Meraz burst through the door, charged Plaintiff, and struck Plaintiff in the chest hard enough to make Plaintiff's head hit the concrete wall, which caused Plaintiff to "lose his breath in pain," become dizzy, and almost lose consciousness. Meraz pointed his pepper spray canister at Plaintiff's face the whole time and taunted him. Meraz then placed Plaintiff in mechanical restraints and told Plaintiff he was going to take care of him.

### III. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [a]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir.

3

1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

///
///
///

A.     **Excessive Force**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). '[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" Id. (Quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends on the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992).

For excessive force claims, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment, regardless of whether or not significant injury is evident." Id. at 9-10.

Defendant supports his motion with Plaintiff's Deposition and the declaration of Dr. U. Baniga, M.D. Plaintiff's deposition establishes that to get to his housing unit, Plaintiff had to cross the exercise yard. (Pltf.'s Dep. 17:15-20.) Plaintiff knocked on the door to his housing unit. (Id., 17:15-20.) Plaintiff vaguely recalled that Defendant opened the door to release inmates for work, but then slammed the door in Plaintiff's face. (Id., 17:24-18:14.) Plaintiff yelled through the door that it was cold outside. (Id., 18:25-19:5.) Defendant came outside, walked toward Plaintiff, told Plaintiff that he did not have to bang on the door, and told Plaintiff to get up against the wall. (Id., 19:7-16, 20:16-25.) When Plaintiff turned to face Defendant instead of obeying the order to get up against the wall, Defendant struck Plaintiff in the chest, causing Plaintiff to hit the wall of the building. (Id., 19:7-16, 20:16-25.) Although Defendant had pepper spray at his disposal, he did not use it. (Id., 28:1-3.) Plaintiff was then escorted to the program office and placed in a holding cell, where he was processed for re-housing in

administrative segregation. (Id.,28:15-20 .) As part of that processing, Plaintiff was examined by a Medical Technical Assistant (MTA). Plaintiff told the MTA that Defendant had punched him. (Id., 29:13-15.) Plaintiff told the MTA the extent of his injuries. (Id., 29:16-18.) The only injury Plaintiff reported was pain to his chest, where he had been punched. (Id., 29:19-30:9.) At his deposition, Plaintiff could not recall what pains or symptoms, if any, he had while he was in the holding cell. (Id., 30:10-12.) The only symptoms Plaintiff could recall is a little soreness in his chest and back, and ringing in his ears. (Id., 30:13-20.) Plaintiff did not recall how long it took for the ringing in his ears to clear up. (Id., 30:21-23.) Plaintiff had back pain before the incident of January 27, 2009, that required medical care. (Id., 31:13-17.) Plaintiff had been prescribed Naproxen before January 27, 2009, for back pain; although he had several medical appointments in the weeks following January 27, 2009, he was not prescribed additional pain medication or an increased dosage. (Baniga Decl., ¶ 2.) Although Plaintiff was seen for emergency care on January 27, 2009, after the encounter with Defendant, Plaintiff asked only to see a psychiatrist, and denied being in pain. (Id.) Although he has been housed at different prisons after the incident, Plaintiff has not reported the incident with Defendant to any health care provider. (Pltf's. Dep., 32:12-36; Baniga Decl., ¶ 2.) Plaintiff's medical records do not reflect any treatment for any injury on January 27, 2009, or any increased level of symptomology in his back after that date. (Baniga Decl., ¶ 2.) In Dr. Baniga's view, there is no evidence in Plaintiff's medical records that he suffered any injury to his back on January 27, 2009. (Baniga Decl., ¶ 3.)

Defendant argues that the force used on Plaintiff did not result in injury significant enough to warrant relief. The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002).

However, the relevant inquiry is not whether Plaintiff's injuries are *de miminis*, but whether the use of force was *de minimis*. See Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010)("Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." )  The degree of Plaintiff's injuries only serves as evidence of the degree of force used, it does not conclusively resolve the question of whether the degree of force was *de minimis*. See Wilkins, 130 S.Ct. at 1178 ("The extent of injury may . . . provide some indication of the amount of force applied.")  Defendant cannot escape liability for the use of force simply because Plaintiff failed to suffer any treatable injury. See Wilkins, 130 S. Ct. at 1178 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."); Hudson, 503 U.S. at 9 ("In the excessive force context, society's expectations are different.  When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.  This is true whether or not significant injury is evident.") (internal citations omitted).  This case therefore turns on whether the force used was excessive within the meaning of the Eighth Amendment, or used in a good faith effort to restore order or maintain discipline.  The extent of Plaintiff's injury will be a factor in determining whether the force used by Meraz was excessive.

The Court finds that Defendant has met his burden on summary judgment.  The evidence submitted by Defendant establishes that his use of force, pushing Plaintiff in the chest, was in response to Plaintiff's disobedience to his order to get up against the wall. The evidence establishes that Plaintiff yelled for Defendant to open the door, that Defendant ordered Plaintiff to stand against the wall, and that Plaintiff refused the order.   The evidence establishes that, although Defendant could have used pepper spray, he chose to use the least amount of force necessary to gain compliance.   The burden shifts to Plaintiff to come forward with a triable issue of fact regarding whether Defendant's use of force was sadistic or malicious, or whether it was used in a good faith effort to restore discipline or maintain order.

1    Plaintiff supports his opposition with his declaration, made under the penalty of perjury.
2 Plaintiff declares that:

3
> on 1-27-2009 after returning from receiving my morning Jewish kosher diet meal to the front of Facility 6, building 650 (where I was housed) at Avenal State Prison (ASP) I was physically assaulted (punched in the chest causing me to fall and hit my head violently against the wall)by (correctional officer) Defendant Meraz without provocation.

7    In his deposition, Plaintiff indicates that he "tried to yell through the door," and that
8 Meraz "turned around and came bursting through the door and charged at me, struck me in the
9 chest causing my head to crash into the concrete wall so that is what happened after that." (Ptf.'s
10 Dep., 19:7-12.)   When asked to explain what he meant by being struck, Plaintiff indicated that

11
> He came through the door, walked towards me, pulled out his pepper spray, told me to get up against the wall.  He said something that I can't recall, he said something else, he asked me some question or something about yelling through the door or banging on the door, but I can't remember exactly what it was. And when I turned around to face him he struck me in the chest with his fist. . . And I fell backward, hit my head against the wall and the back of my head against the wall and my knees buckled and my back kind of, you know, gave way a little bit.  I almost felt, you know, I was dizzy and almost became unconscious.  And also there was like a ringing in my – in my ears and in my head.

(Id., 20:19-21:7.)

As noted, the evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587.  Taking Plaintiff's statements as true, and drawing the inferences in his favor, a triable issue of fact exists as to whether the force used was excessive.  The facts indicate that Meraz was not confronted with a physical threat, but a refusal to obey an order.  Plaintiff's statements indicate that Meraz punched Plaintiff in the chest, knocking his head into a concrete wall causing Plaintiff's ears to ring. From such facts, a reasonable jury could find in Plaintiff's favor.  Defendant's motion should therefore be denied.

1    Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for summary
2 judgment be denied.

3    These findings and recommendations are submitted to the United States District Judge
4 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days
5 after being served with these findings and recommendations, any party may file written
6 objections with the court and serve a copy on all parties.  Such a document should be captioned
7 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
8 shall be served and filed within ten days after service of the objections.   The parties are advised
9 that failure to file objections within the specified time waives all objections to the judge's
10 findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file
11 objections within the specified time may waive the right to appeal the District Court's order.
12 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14 IT IS SO ORDERED.

15 Dated: January 29, 2013               /s/ Gary S. Austin
                                        UNITED STATES MAGISTRATE JUDGE

16    IT IS SO ORDERED.

17    **Dated:   January 29, 2013**          **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE